UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

JOHN R. DAVIES

        Plaintiff,

        v.                          **REPORT AND RECOMMENDATION**
                                      **08-CV-01115 (GLS)**

MICHAEL J. ASTRUE
COMMISSIONER OF SOCIAL SECURITY,

        Defendant,

## I.    Introduction

Plaintiff John Davies brings this action pursuant to the Social Security Act ("the Act"), 42 U.S.C. §§ 405(g), 1383(c)(3), seeking review of a final decision of the Commissioner of Social Security ("Commissioner"), denying his application for Disability Insurance Benefits ("DIB").[1]

## II.    Background

Plaintiff applied for DIB on March 21, 2005, alleging an onset date of January 15, 2004 (R. at 29-A).[2] Plaintiff alleges disability due to various back impairments. His application was denied initially on April 20, 2005. Id. Plaintiff filed a request for a hearing on June 7, 2005 (R. at 49).

On September 25, 2006, Plaintiff appeared before the ALJ (R. at 189-208). The ALJ considered the case *de novo* and, on December 16, 2006, issued a partially favorable decision finding Plaintiff disabled on June 20, 2006, but not prior to that date (R. at 19-29). The ALJ's decision became the Commissioner's final decision in this case

---

[1] This case was referred to the undersigned for Report and Recommendation, by the Honorable Norman A. Mordue, pursuant 28 U.S.C. § 636(b)(1)(B), by an Order dated February 5, 2010.
[2] Citations to the underlying administrative record are designated as "R."

when the Appeals Council denied Plaintiff's request for review on September 9, 2008 (R. at 3-5). On October 17, 2008, Plaintiff filed this action. The relevant time period for this case is from Plaintiff's alleged onset date, January 15, 2004, through the ALJ's finding of disability on June 20, 2006.

Pursuant to General Order No. 18, issued by the Chief District Judge of the Northern District of New York on September 12, 2003, this Court will proceed as if both parties had accompanied their briefs with a motion for judgment on the pleadings. [3]

### III.   Discussion

#### A.   Legal Standard and Scope of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383 (c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant

---

[3] Although no motion for judgment on the pleadings was filed, the moving party was excused from such filing under General Order No. 18, which states in part: "The Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings . . . ." General Order No. 18. (N.D.N.Y. Sept. 12, 2003).

evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams ex rel. Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

The Commissioner has established a five-step sequential evaluation process[4] to

---

[4]The five-step process is detailed as follows:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to

determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 416.920, 404.1520. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir.1984).

The final step of the inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 416.920(g); 404.1520(g); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

Based on the entire record, the Court recommends that the decision of the Commissioner be affirmed.

### B.  Analysis

#### 1.  The Commissioner's Decision

In this case, the ALJ made the following findings with regard to factual

---

perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. §§ 416.920, 404.1520.

information as well as the five-step process set forth above: at step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity as of his alleged onset date, January 15, 2004 (R. at 21). At step two, the ALJ found Plaintiff's "residual of spinal fusion" to be his sole severe impairment. Id. Plaintiff's "left inguinal hernia repair," was found to be a non-severe impairment (R. at 24). The ALJ next determined that Plaintiff's impairments, either singly or in combination, did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (R. at 24). The ALJ then found that

> [p]rior to June 20, 2006, [Plaintiff] had the residual functional capacity for a full range of sedentary work. [Plaintiff] was capable of lifting and/or carrying 10 pounds occasionally, less than 10 pounds frequently, standing and/or walking about 2 hours in an 8-hour workday, sitting about 6 hours in an 8-hour workday, with pushing/pulling as shown for lifting and carrying

(R. at 24-25). Although the ALJ found Plaintiff's allegations of pain, prior to June 20, 2006, not to be entirely credible (R. at 26) the ALJ found that

> [b]eginning on June 20, 2006, [Plaintiff] had the residual functional capacity to [perform] significantly less than a full range of sedentary work. [Plaintiff] [wa]s limited to lifting and/or carrying 10 pounds, but not frequently, c[ould not] stand in one place for any period of time and c[ould not] sit in one position for any period of time, but must move and change positions. He [wa]s unable to climb, balance, stoop, crouch, kneel or crawl and ha[d] limitations in reaching, handling, and pushing/pulling. [Plaintiff] should avoid working at heights, around moving machinery, and in temperature extremes, humidity and vibrations since his surgery in June 2006

(R. at 27). Thus, as of June 20, 2006, Plaintiff's allegations of pain were found to be generally credible. Id. Based on Medical-Vocational Rule 201.19,[5] the ALJ found that prior to June 20, 2006, there were jobs in the national economy that Plaintiff could

---

[5] Medical-Vocational Rule 201.19 directs a finding of not disabled for a younger individual, with limited or less education, and non-transferable skills from skilled or semiskilled past work. 20 C.F.R. Pt. 404, Subpt. P, App 2, Rule 201.19.

perform in significant numbers (R. at 28). However, as of June 20, 2006, there were no longer positions, in significant numbers, in the national economy that Plaintiff could perform. Ultimately, the ALJ found that Plaintiff was disabled as of June 20, 2006, but not prior to that date (R. at 29).

### 2. Plaintiff's Claims:

Plaintiff argues that the ALJ's decision is neither supported by substantial evidence nor made in accordance with the applicable legal standards. Specifically, Plaintiff argues that a) the ALJ erred in evaluating the opinions from Plaintiff's treating physicians; b) the residual functional capacity ("RFC") is not supported by substantial evidence; and c) the ALJ erred in applying the Medical-Vocational Guidelines in finding Plaintiff not disabled.

### a)  The ALJ Properly Evaluated the Opinions from Plaintiff's Treating Physicians

Plaintiff argues, generally, that evidence from Plaintiff's treating physicians, i) orthopedist Dr. John Brosnan and ii) surgeon Dr. Eric Seybold, necessitate a finding that Plaintiff was disabled as of January 15, 2004. Plaintiff's Brief, pp. 8-10. Plaintiff's Brief could also be read to argue that the ALJ erred in relying more heavily on the Social Security Administration ("SSA") consultative sources. Plaintiff's Brief, p. 9

### i)  The ALJ Properly Evaluated the Opinions from Dr. Brosnan

Plaintiff argues that the ALJ erred in applying the treating physician rule when evaluating the opinions from Plaintiff's treating orthopedist, Dr. Brosnan. Plaintiff's Brief, pp. 8-10. Specifically, Plaintiff contends that the ALJ erred by discounting Dr. Brosnan's

6

opinions because they were rendered for a Workers' Compensation claim. Plaintiff's Brief, p. 9.

According to the "treating physician's rule,"[6] the ALJ must give controlling weight to the treating physician's opinion when that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2); see also Green-Younger v. Barnhart, 335 F.3d 99, 105 (2d Cir. 2003); Shaw v. Chater, 221 F.3d 126, 134 (2d Cir. 2000). "Failure to provide 'good reasons' for not crediting the opinion of a claimant's treating physician is ground for remand." Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999) (citing Schaal v. Apfel, 134 F.3d 496, 505 (2d Cir. 1998)).

Orthopedist Dr. Brosnan began treating Plaintiff soon after his January 15, 2004 work injury (R. at 96). Dr. Brosnan continued to treat Plaintiff through April 8, 2005, at which time it appears Plaintiff's care was transferred to surgeon, Dr. Seybold (R. at 162).

Dr. Brosnan failed to submit a functional assessment of Plaintiff's ability to work despite his impairments.[7] Therefore, any opinions from Dr. Brosnan can only be found in his treatment notes. Dr. Brosnan's treatment notes contain several statements indicating that Plaintiff was unable to work. See (R. at 99) (unable to work on January 30, 2004); (R. at 130) (unable to work on July 8, 2004); (R. at 109) (unable to work on January 19, 2005); (R. at 162) (unable to work on April 8, 2005). Dr. Brosnan also

---

[6] "The 'treating physician's rule' is a series of regulations set forth by the Commissioner in 20 C.F.R. § 404.1527 detailing the weight to be accorded a treating physician's opinion." de Roman v. Barnhart, 2003 WL 21511160, at *9 (S.D.N.Y. July 2, 2003).
[7] Plaintiff has not argued that the ALJ erred in failing to fully develop the record by attempting to obtain such an assessment from Dr. Brosnan.

noted, on January 19, 2005, that Plaintiff "may not get back to work at more than a light duty level" (R. at 109).

The ALJ discussed these opinions and found that they were rendered in connection to a Workers' Compensation claim (R. at 25). The ALJ then found that Dr. Brosnan's "reports [were] of little probative value" because "the standards utilized by the Worker's [sic] Compensation are not comparable to the criteria employed by the Social Security Administration in determining disability." Id. Plaintiff has failed to identify any functional assessments in Dr. Brosnan's treatment notes that would have impacted the ALJ's decision. Instead, Plaintiff argues "that a clear statement that the claimant is unable to work is easily applicable to both Workers' Compensation and by the Social Security Administration's rules." Plaintiff's Brief, p. 9. Thus, according to Plaintiff, the ALJ erred in discounting Dr. Brosnan's opinions that Plaintiff was unable to work. Id. However, the Court can find no error in the ALJ's analysis of Dr. Brosnan's opinions.

Contrary to Plaintiff's argument, the ALJ properly discounted Dr. Brosnan's opinions that Plaintiff was unable to work because they were rendered for a Workers' Compensation claim. 20 C.F.R. §§ 404.1504 ("A decision by any . . . agency about whether you are disabled or blind is based on its rules and is not our decision about whether you are disabled or blind. . . . . Therefore, a determination made by another agency that you are disabled or blind is not binding on us."). See also Rosado v. Shalala, 868 F.Supp. 471, 473 (E.D.N.Y. 1994) (citing Coria v. Heckler, 750 F.2d 245, 247 (3d Cir. 1984) ("Although plaintiff's doctors had checked off that plaintiff was disabled on forms sent to the Workers' Compensation Board, the standards which regulate workers' compensation relief are different from the requirements which govern

the award of disability insurance benefits under the Act. Accordingly, an opinion rendered for purposes of workers' compensation is not binding on the Secretary."). Furthermore, opinions concerning the ultimate issue of disability are not medical opinions and are reserved to the Commissioner. 20 C.F.R. §§ 404.1527(a)(2), (e)(1).

The Court acknowledges that the ALJ is "required to evaluate all the evidence in the case record that may have a bearing on our determination or decision of disability, including decisions by other governmental and nongovernmental agencies. Therefore, evidence of a disability decision by another governmental or nongovernmental agency cannot be ignored and must be considered." Social Security Ruling 06-3p, 2006 WL 2329939, at *6 (S.S.A.) [hereinafter SSR 06-3p].

Here, the ALJ engaged in a thorough discussion of the medical evidence submitted by Dr. Brosnan. For example, the ALJ considered Dr. Brosnan's diagnoses of degenerative disc disease, lumbar sprain, and a possible hernia (R. at 21, 96, 100-101); the results of a January 2004 CT scan and a May 2004 MRI (R. at 21, 101, 111-12); results of various physical examinations completed by Dr. Brosnan[8] (R. at 22, 103, 109); as well as Dr. Brosnan's recommendations for physical therapy, vocational rehabilitation, and epidural injections (R. at 22, 25, 100, 107, 108, 109). Furthermore, as previously stated, the ALJ also considered Dr. Brosnan's findings that Plaintiff "was unable to work" and "may not get back to more than a light duty level" as well as recommendations for vocational rehabilitation (R. at 22). Thus, it is clear from the ALJ's

---

[8] The ALJ noted that in July 2004, Dr. Brosnan found "tenderness of the lumbosacral spine, motor strength at 5/5 in the quads, hamstrings, HL, and tibia, anterior and peroneus muscles bilaterally, sensation was intact, and deep tendon reflexes were symmetric except for the left ankle, which was decreased. Straight leg raising maneuver was negative bilaterally" (R. at 22); see also (R. at 103). The ALJ also noted Dr. Brosnan's January 2005 findings of "tenderness over the lumbosacral spine with 5/5 motor strength and intact sensation. Deep tendon reflexes were symmetric, and straight leg raising was negative" (R. at 22); see also (R. at 109).

decision, that she did not ignore the evidence submitted by Dr. Brosnan, despite the fact that any opinions regarding Plaintiff's ability to work were created in a Workers' Compensation context. SSR 06-3p, 2006 WL 2329939, at *6.

Therefore, the ALJ properly rejected Dr. Brosnan's opinions that Plaintiff was unable to work.

### ii)  The ALJ Properly Evaluated the Opinions from Dr. Seybold

While unclear, Plaintiff's argument appears to contend that Dr. Seybold's functional assessment applied to the time period prior to June 20, 2006; and also that evidence found in Dr. Seybold's treatment notes necessitate onset of disability prior to June 20, 2006. Plaintiff's Brief, pp. 8-10. Both arguments are addressed as follows:

Dr. Seybold began treating Plaintiff on May 23, 2005 (R. at 164). Approximately one year later, on June 20, 2006, Dr. Seybold performed spinal surgery on Plaintiff (R. at 185-86). Dr. Seybold completed a functional assessment of Plaintiff's ability to work, despite his impairments, on August 4, 2006 (R. at 158-61). Dr. Seybold opined that Plaintiff effectively was limited to significantly less than sedentary work. Id. The ALJ found that Dr. Seybold's opinions were "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [wa]s not inconsistent with other substantial evidence of record" (R. at 27). Thus, Dr. Seybold's opinions were properly granted controlling weight for the time period after Plaintiff's surgery, June 20, 2006. Id.; 20 C.F.R. § 404.1527(d)(2) (the ALJ must give controlling weight to the treating physician's opinion when that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record"). The ALJ then went on to find that, based on the opinions of

Dr. Seybold, Plaintiff was disabled as of his surgery (R. at 29). The ALJ's analysis of Dr. Seybold's opinions is supported by substantial evidence.

First, the ALJ's finding that Dr. Seybold's opinion related solely to Plaintiff's functioning after surgery, is supported by substantial evidence. Dr. Seybold's notations throughout his report indicate that he was assessing Plaintiff's functioning after surgery (R. at 158-61). For example, Dr. Seybold stated that Plaintiff was "disabled due to back surg[ery] at this time" (R. at 160). Dr. Seybold also noted that Plaintiff "had recent surgery - spinal fusion on 6-20-06 and [wa]s still recovery from surgery - return to work will be approx[imately] one year from surgery" (R. at 161). Indeed, nothing in Dr. Seybold's opinion suggested he was assessing Plaintiff's ability to work before his surgery. Thus, the ALJ properly found that Dr. Seybold's report related solely to the time period after surgery.

Plaintiff next argues that evidence from Dr. Seybold necessitates the finding that Plaintiff was disabled from his alleged onset date of January 15, 2004, though June 20, 2006. Plaintiff's Brief, pp. 9-10. Plaintiff further argues, "[a]t a minimum, there was a significant worsening as of December of 2005." Plaintiff's Brief, p. 9. Although Dr. Seybold did not complete his report until August 4, 2006 (R. at 158-61), treatment notes from Plaintiff's surgeon date back to May 23, 2005 (R. at 164). Contrary to Plaintiff's argument, Dr. Seybold's treatment notes do not necessitate a finding a disability prior to June 20, 2006.

Dr. Seybold found, on May 23, 2005, full range of motion for Plaintiff's hips, knees, and ankles, in the seated position (R. at 163). Plaintiff's straight leg raising test was negative, reflexes at the knee and ankle were symmetrical, and sensation was

Case 3:08-cv-01115-GLS-VEB   Document 13   Filed 06/17/10   Page 12 of 18

intact. Id. Plaintiff began complaining of more severe back and leg pain at his December 1, 2005, examination with Dr. Seybold (R. at 171-A). Dr. Seybold found Plaintiff's straight leg raising test to be markedly positive. Id. Thus, while Plaintiff's contention that his symptoms increased in December 2005 is somewhat supported, the Court notes the record also shows that his impairments were not yet disabling. For example, Dr. Seybold found that Plaintiff exhibited a submaximal effort, noting a "give way weakness,"[9] and found markedly positive Waddell signs.[10] Id. Submaximal effort was again found on February 6, 2006 (R. at 172). As noted by the ALJ, Dr. Seybold's findings were "indicative of symptoms magnification" (R. at 26). Therefore, the ALJ's finding that "prior to June 20, 2006, there was minimal objective medical evidence" of a disabling back impairment, is supported by substantial evidence.

Based on the foregoing, the Court finds that the ALJ properly considered the opinions from Dr. Brosnan and Dr. Seybold. Furthermore, the Court finds no error in the ALJ's determination to grant greater weight to the opinions of the SSA consultative examiners than to Plaintiff's treating physicians, for the relevant timer period.[11] See Social Security Ruling 96-6p, 1996 WL 374180 at *3 (S.S.A.) ("In appropriate circumstances, opinions from State agency medical and psychological consultants and

---

[9] Give-way indicates that there was "no actual physical cause for the weakness." Attorneys Medical Deskbook 4th, (4th ed. 2008), *available at* MEDDESK § 18:4 ("Named tests and signs used in diagnosis") (Westlaw) (hereinafter MEDDESK).

[10] There are eight Waddell signs. MEDDESK § 18:4. "Each sign . . . implies that the back pain has no physical cause. One or two of these signs may arise from patient anxiety or eagerness to cooperate. Three or more are usually considered sufficient to make a diagnosis of functional disorder or deliberate deception (malingering) and to rule out physical abnormality." Id.

[11] The Court also notes that Dr. Brosnan failed to submit a functional assessment, and Dr. Seybold's opinions were created after June 20, 2006. Thus, for the relevant time period, the ALJ had no treating physician's report on which to rely when determining Plaintiff's disability.

other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources.").

### b) The RFC is Supported by Substantial Evidence

Plaintiff argues that the RFC, prior to June 20, 2006, was not supported by substantial evidence because the ALJ relied on the opinions of a disability analyst. Plaintiff's Brief, pp. 9, 10-12.

An individual's "residual functional capacity is the most you can still do despite your limitations." 20 C.F.R. § 404.1545(a)(1). In order to determine a claimant's RFC, the ALJ must assess "all of the relevant medical and other evidence." § 404.1545(a)(3). Also, the ALJ must consider the claimant's "ability to meet the physical, mental, sensory, and other requirements of work...." "on a regular and continuing basis." §§ 404.1545(a)(4), (b).  Regular and continuing basis is defined as "8 hours a day, for five days a week, or an equivalent work schedule." SSR 96-8p, 1996 WL 374184, at *1.

Here, the ALJ found that,

> [p]rior to June 20, 2006, [Plaintiff] had the residual functional capacity for a full range of sedentary work. [Plaintiff] was capable of lifting and/or carrying 10 pounds occasionally, less than 10 pounds frequently, standing and/or walking about 2 hours in an 8-hour workday, sitting about 6 hours in an 8-hour workday, with pushing/pulling as shown for lifting and carrying

(R. at 24-25). The RFC is supported by the opinions from the SSA consultative examiner, Dr. Mark Henderson, as well as the SSA disability analyst. Thus, the Court finds that the RFC is supported by substantial evidence.

Dr. Henderson examined Plaintiff, at the request of the SSA, on April 11, 2005 (R. at 145-49). Dr. Henderson opined that Plaintiff "[wa]s markedly restricted for any heavy lifting and carrying . . . . Also, he [had] a mild restriction for prolonged standing,

prolonged walking, especially on any type of uneven surfaces and prolonged sitting. He ha[d] no restrictions . . . for speaking, hearing, handling objects, or personal grooming" (R. at 148). Dr. Henderson's opinions are consistent with the finding that Plaintiff could perform sedentary work.[12] The ALJ discussed Dr. Henderson's opinions and found that "[a]lthough this opinion [wa]s from a non-treating doctor, it [wa]s supported by the evidence up to that date and [wa]s accorded weight" (R. at 25).

An SSA disability analyst reviewed Plaintiff's record on April 20, 2005 (R. at 151-56). The analyst found that Plaintiff was able to lift and/or carry ten pounds occasionally and less than ten frequently, stand and/or walk at least two hours in an eight-hour workday, sit about six hour in an eight-hour workday, and had an unlimited ability to lift and/or carry, other than as shown for lift and/or carry (R. at 152). As with the opinions from Dr. Henderson, the analyst's findings are also consistent with the ALJ's determination that Plaintiff could perform sedentary work. The ALJ considered the analyst's opinions and found that "[s]ince the examiner based the assessment upon a review of the medical evidence and explained the basis for the assessment, it [wa]s given some weight, although it d[id] not constitute a medical opinion" (R. at 25).

Thus, contrary to Plaintiff's argument, the RFC is not only supported by the opinions of a disability analyst. Because the ALJ relied on the opinions from Dr. Henderson as well as the disability analyst, the Court finds that the RFC is based on substantial evidence.

---

[12] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).

### c) The ALJ's Application of the Medical-Vocational Guidelines was Proper

Plaintiff argues that the ALJ improperly applied the Medical-Vocational Guidelines in finding Plaintiff not disabled. Plaintiff's Brief, pp. 12-13. Plaintiff further contends that the ALJ erred in failing to obtain testimony from a vocational expert ("VE"). Id.

At step 5 in the sequential evaluation, an ALJ is required to perform a two part process to first assess Plaintiff's job qualifications by considering his physical ability, age, education, and work experience, and then determine whether jobs exist in the national economy that Plaintiff could perform. See 42 U.S.C. ' 423(d)(2)(A); 20 C.F.R. ' 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 1954, 76 L.Ed.2d 66 (1983).

The second part of this process may sometimes be satisfied by referring to the applicable rule of the Medical Vocational Guidelines set forth at 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly called "the Grids" or the "Grid"). See Bapp v. Bowen, 802 F.2d 601, 604 (2d Cir.1986).

The function of the Grids was succinctly summarized by the court in Zorilla v. Chater, 915 F.Supp. 662, 667 (S.D.N.Y.1996) as follows:

> In meeting [his] burden of proof on the fifth step of the sequential evaluation process described above, the Commissioner, under appropriate circumstances, may rely on the medical vocational guidelines contained in 20 C.F.R. Part 404, Subpart P, App. 2, commonly referred to as "the Grid." The Grid takes into account the claimant's residual functional capacity in conjunction with the claimant's age, education and work experience. Based on these factors, the Grid indicates whether the claimant can engage in any other substantial gainful work which exists in the national economy. Generally the result listed in the Grid is dispositive on the issue of disability.

Id.

"The Grid classifies work into five categories based on the exertional requirements of the different jobs. Specifically, it divides work into sedentary, light, medium, heavy and very heavy, based on the extent of requirements in the primary strength activities of sitting, standing, walking, lifting, carrying, pushing, and pulling." Id. at 667 n. 2; see 20 C.F.R. ' 404.1567(a). Upon consideration of a claimant's residual functional capacity, age, education, and prior work experience, the Grid yields a decision of "disabled" or "not disabled." 20 C.F.R. ' 404.1569, ' 404 Subpt. P, App. 2, 200.00(a).

However, if a claimant's work capacity is significantly diminished by non-exertional impairments beyond that caused by his or her exertional impairment(s), then the use of the Grids may be an inappropriate method of determining a claimant's residual functional capacity and the ALJ may be required to consult a vocational expert. See Pratts v. Chater, 94 F.3d 34, 39 (2d Cir.1996); Bapp v. Bowen, 802 F.2d 601, 604 605 (2d Cir.1986).

Plaintiff has failed to identify what non-exertional limitations he experienced. The ALJ found that, prior to June 20, 2006, the RFC contained solely exertional limitations (R. at 24-25). The Court has previously found that the ALJ's RFC was supported by substantial evidence. Supra Part III.B.2.b. Thus, the ALJ properly utilized the Medical-Vocational Guidelines in finding Plaintiff not disabled and did not err in failing to obtain evidence from a VE.

## IV.     Conclusion

After carefully examining the administrative record, the Court finds that substantial evidence supports the ALJ's decision, including the objective medical evidence and supported medical opinions. It is clear to the Court that the ALJ thoroughly examined the record, afforded appropriate weight to all the medical evidence, including Plaintiff's treating sources, and afforded Plaintiff's subjective claims of limitations an appropriate weight when rendering her decision that Plaintiff is not disabled. The Court finds no reversible error.  Because the Court further finds that substantial evidence supports the ALJ's decision, it is respectfully recommended that Defendant's Motion for Judgment on the Pleadings be GRANTED, that Plaintiff's Motion for Judgment on the Pleadings be DENIED, and that the decision of the Commissioner be affirmed.

Respectfully submitted,

Victor E. Bianchini
United States Magistrate Judge


DATED:     Syracuse, New York
           June 17, 2010

**ORDER**

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby


**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within ten (14) days of receipt of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**<u>Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.</u>** *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985);   *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989);   *Wesolek v. Canadair Limited,* 838 F.2d 55 (2d Cir.1988).

Let the Clerk send a copy of this Report and recommendation to the attorneys for the Plaintiff and the Defendants.

SO ORDERED.

Victor E. Bianchini
United States Magistrate Judge

          Syracuse, New York
DATED:    June 17, 2010